UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| South Carolina Progressive Network Education Fund,<br><br>    Plaintiff,<br><br>  v.<br><br>Marci Andino, *et al.*,<br><br>    Defendants. | No.: 3:20-cv-03503-MGL<br><br>**State Election Commission Defendants' Opposition to Motion for Temporary Restraining Order and Preliminary Injunction** |

Defendants Marci Andino, John Wells, JoAnne Day, Clifford J. Edler, Linda McCall and Scott Moseley ("Election Defendants"), all of whom have been sued in their official capacities with the State Election Commission, submit this Opposition to the South Carolina Progressive Network Education Fund's ("SCPN") Motion for a Temporary Restraining Order and Preliminary Injunction.

## Introduction

Voting is important. COVID-19 is serious. No one disputes those two things.

But those two things do not mean that the Plaintiffs are entitled to the relief they seek. Three main reasons are insurmountable hurdles to any injunctive relief. *First*, the SCPN lacks standing. Reading its motion makes clear that the obstacle to registering voters isn't State law, but COVID-19. Indeed, even if the Court awarded the relief the SCPN seeks, there is no guarantee the SCPN would actually be able to register more voters in light of the ever-evolving nature of COVID-19.

*Second*, the United States Supreme Court has repeatedly instructed lower federal courts not to change election rules on the eve of an election, a rule known as the *Purcell* principle. The SCPN, however, waited until the proverbial eleventh hour

to file this lawsuit. Despite its grievances being rooted in COVID-19 (which has been impacting society for more than six months), the SCPN did not file this lawsuit until right before the registration deadline (so late, in fact, a hearing cannot be held until *after* the deadline has passed). The *Purcell* principle (not to mention laches) forbids relief after such a delay in bringing this lawsuit.

*Third*, even during this pandemic, the registration deadline does not pose any more of a burden on voters than it normally does. And the *deadline* is not what impacts the SCPN; COVID-19 is impacting the SCPN. Moreover, the SCPN gives short shrift to the important State interest in an orderly election, particularly an election with such heightened political tensions during a pandemic.

## Background

South Carolina, like other States, requires a person to register to be able to vote, and a person must register at least 30 days before the election. *See* S.C. Code Ann. §§ 7-5-110, 7-5-150. A person has three ways to register. First, she may mail an application to her county board of voter registration and elections ("County Board"). *See id.* § 7-5-155(a). An application is considered submitted the day it is postmarked, or if it has no postmark or the postmark is illegible, the County Board must accept the application if it is received by mail no later than five days after the registration books are closed—in this election cycle, October 9, 2020—25 days before Election Day. *See id.*

Second, a person may also return an application to her County Board in person. *See id.* A hand-delivered application must be received at least 30 days before Election Day. *See id.*

Or third, a person may register online on the State Election Commission's website, as long as she has a driver's license or other State-issued identification card. *See id.* § 7-15-185(A). This online application must be completed at least 30 days before Election Day.

Voters do not need to read the S.C. Code to know this. Or even look to election officials. Local news media is providing this information to the public as well. *See, e.g.*, *Oct. 4 Is Deadline to Register to Vote in 2020 General Election*, WIS (Sept. 29, 2020), https://www.wistv.com/2020/10/04/oct-is-deadline-register-vote-general-election/; *cf. G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016) (evidence that is inadmissible at trial can be considered in deciding a motion for a preliminary injunction), *vacated and remanded on other grounds,* 137 S. Ct. 1239 (2017).

The mail and in-person options have been South Carolina law since 1996. *See* 1996 S.C. Acts No. 466, §§ 4, 5. The online option was enacted in 2012, and it has never been changed. *See* 2012 S.C. Acts No. 265, § 2.

The SCPN filed this lawsuit on October 2, 2020, and at the same time, the SCPN sought preliminary injunctive relief. That is just 32 days before November's general election.

## Legal Standard

When plaintiffs seek a preliminary injunction or a temporary restraining order, they must satisfy each of four elements: "(1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." *Metro. Reg'l Info.*

*Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013); *see also Z-Man Fishing Prod., Inc. v. Renosky*, 790 F. Supp. 2d 418, 425 (D.S.C. 2011) (elements for temporary restraining order). This type of preliminary relief is "an extraordinary remedy," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and even more extraordinary when the injunction sought is a mandatory one as is the case here, (which changes the status quo), *see Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) (the power to issue a mandatory preliminary injunction "should be exercised sparingly").

## Argument

### I. The SCPN lacks standing.

It is axiomatic that "Article III standing is part and parcel of the constitutional mandate that the judicial power of the United States extend only to cases and controversies." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (internal quotation marks omitted); *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997) (standing goes to subject-matter jurisdiction). "In an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011).

The "irreducible minimum" of standing is that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). On the first element, "a

4

plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548. On the second element, there must be a "causal connection" between the injury and the defendant's conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). And on the third element, "a plaintiff must show that it is likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Meyer v. McMaster*, 394 F. Supp. 3d 550, 558 (D.S.C. 2019) (internal quotation marks omitted) (quoting *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018)).

Even assuming the SCPN has a constitutionally cognizable injury (and that is all the SCPN's standing argument addresses, *see* ECF 2 at 29–30), that injury is not traceable to the Election Defendants, nor is it likely to be remedied by any order from this Court. Starting with traceability, the SCPN's motion is replete with statements that make clear COVID-19 is what has frustrated its registration initiatives. It explains that, *after months* of remote-registration efforts, the SCPN "held out hope that in September . . . it would be safe to resume normal in-person work," but "it was not to be [because] infection rates in South Carolina climbed over the summer, and it continued to be unsafe." ECF 2 at 4. Its usual avenues for registration—such as football games, churches, colleges, bus stations, healthcare facilities, and social events—haven't been held or have limited access because of COVID-19. *See* ECF 2 at 12, 13, 15.[1] Many of the SCPN's volunteers are at high risk

---

[1] As discussed more later, the fact that events and gatherings have been canceled or held remotely is a matter of common knowledge and has been the subject of public debate for months. Likewise, the fact that South Carolina's

5

of severe cases if they contract COVID-19, so they have not participated the way they have in past years. *See* ECF 2 at 13–14. Ultimately, the SCPN's "pandemic efforts" have simply not been as effective as the methods it could use in previous years, it insists. ECF 2 at 15.

All of these statements demonstrate that COVID-19 is the reason the SCPN's registration efforts this year allegedly have been less successful than it had hoped. This is a principle that other courts facing COVID-19 challenges to election rules have recognized. For example, a federal district court in Louisiana dismissed a case for lack of standing. It explained:

> assuming that this alleged diversion of resources suffices to show Article III injury, that injury is traceable to the Virus, not Defendants. The Challenged Provisions were part of Louisiana election law pre-Virus. To the extent those provisions impact the Louisiana NAACP and its members differently now, it is due to the Virus and its attendant upheaval.

*Clark v. Edwards*, No. CV 20-283-SDD-RLB, 2020 WL 3415376, at *13 (M.D. La. June 22, 2020). And so it is here. COVID-19 is the culprit here.

Turning to redressability, the SCPN fares no better. It admits that despite its plans and hopes, COVID-19 has upended its intentions. *See, e.g.*, ECF 2 at 4. Even if the Court were to extend the registration deadline, there's no way to know whether the SCPN could engage in its in-person registration efforts any more successfully now than it has for the last several months, for all or even part of the extended window. COVID-19 is constantly changing. As Chief Justice Roberts put

---

COVID-19 rate spiked in late June and July has also been a matter of common knowledge and sparked debate public debate about the proper response. Yet, the SCPN waited until October 2 to file this lawsuit and seek "emergency" relief.

it, this "pandemic is a dynamic and fact-intensive matter" and "fraught with medical and scientific uncertainties." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief). Plus, given that most of the SCPN's volunteers are in the high-risk category, *see* ECF 2 at 13–14, there are unlikely to begin volunteering again merely because the registration deadline has been extended.[2]

## II.    *Purcell* precludes the relief the SCPN seeks.

Invoking *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam), the Supreme Court has, once again this election cycle, ordered "lower federal courts" not to "alter the election rules on the eve of an election," *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam). Yet that is exactly what the SCPN asks this Court to do.

Two days before registration closes, the SCPN filed this lawsuit and asked for injunctive (*i.e.*, equitable) relief. Yet the statutory registration deadline has been in place for more than two decades, and the SCPN has known about COVID-19 since March. But the SCPN did not seek relief in the spring. Or even in the summer. The SCPN didn't seek relief by Labor Day. Instead, it waited until October, on the eve of the registration deadline.

---

[2] A final thought of redressability: As part of the SCPN's efforts, it notes it works with the SC NAACP on the "Missing Voter Project." ECF 2 at 11. The SC NAACP has sued the Election Defendants in *Thomas v. Andino*, No. 3:20-cv-1552 (D.S.C.), alleging that getting a witness signature on an absentee ballot is too dangerous during the pandemic. If something that takes less than 60 seconds is too dangerous, it is unclear how the SCPN working with the SC NAACP can insist that a longer in-person interaction is something its volunteers want to undertake.

7

Because of the SCPN's delay in bringing this case on the Friday before the registration deadline expires, this Court now is not able to consider the motion for injunctive relief until *after* the registration deadline has passed. That is exactly the type of thing *Purcell* forbids.

### III.    The SCPN is not likely to prevail on the merits.

In evaluating election regulations, courts "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate,'" on the one hand, "against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,'" on the other. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). When it is a "reasonable, nondiscriminatory" restriction, "the State's important regulatory interests are generally sufficient to justify" it. *Id.*

#### A.    The registration deadline is not a burden.

Ultimately, registration is about the individual voter and giving that person the ability to exercise this fundamental right. For all of the SCPN's discussion of how hard COVID-19 has been on that organization, it's important to remember why the SCPN is undertaking its efforts.

To be sure, the registration deadline does not burden the people who actually register to vote. State law gives people three ways to register. *See* S.C. Code Ann. §§ 7-5-155, 7-5-185. Two of those ways—by mail and online—are completely unaffected by COVID-19. In other words, those registration methods do not require any contact with another person or pose even the slightest increase risk of contracting COVID-

8

19—nor does the SCPN make any such allegations. Thus, an individual is just as capable of registering safely during COVID-19 as she was before this pandemic spread.[3]

The registration deadline is also not a severe burden on the SCPN. There must necessarily be *some* deadline for voter registration. Whenever that deadline is in this election cycle, the SCPN could be facing the same challenges and frustrations it has been facing since March.

Plus, the *deadline* does not impose a severe burden on the SCPN. If anything, COVID-19 does. In any event, the SCPN admits that it has other ways to interact with people and encourage them to register. *See, e.g.*, ECF 2 at 14–15. That these other ways haven't been as successful does not mean the burden here is severe. The SCPN is simply facing the same challenges that all organizations are: how to operate in this pandemic. If figuring that out was, legally speaking, a severe burden, organizations would be able to challenge countless laws under strict scrutiny.

But organizations are not suing at every turn. Instead, organizations across this State (from businesses, to government, to sports teams, to schools, to churches,

---

[3] On a related note, the SCPN's point about differences in registration numbers, *see* ECF 2 at 21, misses the mark. We want people to register so they can vote. And whatever the registration numbers for 2020, more people voted in the June primaries this year than in any previous June primary. *Compare* Voter Participation History (1998-2018), S.C. Election Comm'n, https://www.scvotes.gov/sites/default/files/Voter%20Participation%20History%20(1998-2018)_0.pdf, *with* 2020 Statewide Primaries, S.C. Election Comm'n, https://www.enr-scvotes.org/SC/103402/Web02-state.250556/#/. Thus, people are voting in record numbers, despite the pandemic and any lower registration numbers. And there are more South Carolinians registered to vote in the 2020 General Election than there were in the 2018 General Election.

and others) have been figuring out how to begin face-to-face interactions, while complying with the CDC's recommendations on social distancing, hygiene, and other precautions. Nowhere does the SCPN even alleged it has tried to employ the CDC's guidelines.

Finally, for all of the SCPN's reliance on *Fair Maps Nevada v. Cegavske*, No. 3:20-CV-00271, 2020 WL 2798018 (D. Nev. May 29, 2020), that case is distinguishable in many ways. One, it was decided in May, when we knew far less than we do now about how to interact with each other safely without spreading COVID-19. Two, that case involved a plaintiff that *had* to obtain a certain number of signatures to comply with Nevada's ballot-initiative law. Here, by contrast, the SCPN wants to register as many people as possible, but it does not have a legally required number it must meet. Three, the stay-at-home order in Nevada had just been lifted after six weeks when that case was decided. South Carolina's "home-or-work" order, by contrast, was lifted on May 3, 2020. *See* Gov. Henry McMaster, Exec. Order 2020-31 (May 3, 2020).[4] So although the SCPN may have had to adopt different methods since May 3, it has been legally allowed to interact with voters in myriad places for five months. Given its reliance on *Fair Maps Nevada*, other than "hoping that COVID-19 will go away," SCPN inexplicably provides no reason why it waited until October 2 to seek relief.

---

[4] That order went into effect on April 6. *See* Gov. Henry McMaster, Exec. Order 2020-21 (Apr. 6, 2020). The SCPN is thus incorrect when it says the State has had "months of stay-at-home orders." ECF 2 at 20.

**B.     South Carolina has an important, even compelling, interest in the registration deadline.**

States have compelling interests in an orderly election process. As the Supreme Court put it, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). This includes ensuring voter rolls are accurate. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196–97 (2008).

The SCPN doesn't take issue with this concept. Rather, it insists the State does not need 30 days to make sure voter rolls are accurate. To be sure, in the past, the registration deadline has been extended. But the SCPN's two examples involve hurricanes. *See* ECF 2 at 24–25. Those emergencies occurred just days before the deadline and the damage caused by these acts of God effectively prevented people in the impacted counties from being able to register, whether in person, online, or by mail because of power outages or mail disruptions. With COVID-19, on the other hand, the "emergency" has been (in the SCPN's words) a "seven-months-long pandemic." ECF 2 at 10. There is, in other words, no urgency to the registration issue here as there was with the hurricanes in 2016 and 2018. This also distinguishes *Florida Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016), and *Georgia Coalition for the Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344 (S.D. Ga. 2016), on which the SCPN relies.

The fact that the Election Commission supported a failed attempt in the General Assembly to change the registration deadline is of no import here.[5] For one, the General Assembly—not the Election Commission—is constitutionally empowered to establish election procedures. *See* S.C. Const. art. II, § 10. For another, the change the SCPN seeks here is far more drastic than the proposed legislation (and more drastic than the extensions in 2016 and 2018 due to hurricanes). For a third, that change was supported when the State wasn't in a pandemic that has brought an avalanche of litigation on election officials. Two lawsuits have been brought in the S.C. Supreme Court's original jurisdiction. *See Duggins v. Lucas*, No. 2020-001042, 2020 WL 5651772 (S.C. Sept. 23, 2020); *Bailey v. S.C. State Election Comm'n*, 430 S.C. 268, 844 S.E.2d 390 (2020). Two other lawsuits were filed in this Court.[6] *See Middleton v. Andino*, No. 3:20-cv-1730-JMC (D.S.C.); *Thomas v. Andino*, No. 3:20-cv-1552-JMC (D.S.C.). And it's probably a safe bet that more lawsuits will come.

On top of all of this litigation, election officials have to administer this election. That requires dealing with a substantial increase in absentee voting, having actively to recruit additional and new poll managers and workers, and training poll workers about new safety precautions from the CDC for in-person

---

[5] The SCPN tries to make much of the fact that "only nine states" have a 30-day registration deadline. ECF 2 at 28. But the Constitution gives States "broad power to prescribe the 'Time, Places, and Manner of holding Elections for Senators and Representatives.'" *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986) (quoting U.S. Const. art. I, §4, cl. 1). And eight other States have this same rule, indicating it is not constitutionally suspect.

[6] In *Middleton*, the district court enjoined the witness requirement in S.C. Code Ann. § 7-15-380. An emergency application to stay that injunction is currently pending in the U.S. Supreme Court. *See Andino v. Middleton*, No. 20A55 (U.S.).

voting. The Election Commission and County Boards, like other organizations, are working to figure out how COVID-19 impacts their operations. This election will have enough changes. Even if this change in the registration-deadline date could be made in another context, *see* ECF 2 at 27–28, election officials don't need one more change to make now.

## IV.     The SCPN does not face an irreparable harm without an injunction.

The SCPN's irreparable-harm argument assumes that its merits argument is correct. But the SCPN is wrong on that point.

Moreover, the limitations on its ability allegedly to interact with people to register them to vote is (again) caused by COVID-19. The SCPN has the same window of time to interact with potential voters that it has had every two years since at least 1996.  As discussed above, SCPN does not have to meet with people in person to instruct them how to register to vote online or by mail in a registration application.  That can be done by telephone. And even if it's better done in person, it can be done while complying with CDC guidelines.

## V.     The equities and the public interest counsel against an injunction.

Taking these factors together as the SCPN did, at least three considerations counsel against an injunction.

The first is logistical. The registration deadline is already here (in fact, as of this filing, it has passed), and election officials have even more to do in this election than in "normal" years. As the Supreme Court has cautioned, courts must be wary of changes to procedures "just weeks before an election." *Purcell*, 549 U.S. at 4.

The second is precedential. Plaintiffs should be encouraged to act diligently n bringing claims. Laches is one way the law promotes that diligence. *See Costello v. United States*, 365 U.S. 265, 282 (1961) ("Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."). Here, Governor McMaster declared the first state of emergency on March 13, *see* Gov. Henry McMaster, Exec. Order 2020-08 (Mar. 13, 2020), yet the Complaint was not filed until October 2. Put another way, the SCPN took more than six months after the public-health emergency was declared to claim that the extraordinary relief of an injunction was necessary. Failing to act quickly, as the SCPN failed to do, puts this Court, the Election Commission, and the County Boards in an untenable position. That is why courts have refused to grant relief when plaintiffs delay, even in election cases. *See, e.g.*, *Perry v. Judd*, 471 F. App'x 219, 224 (4th Cir. 2012) ("Despite the fact he was able to bring these constitutional challenges for over four months before the filing deadline of December 22, 2011, Movant waited until the eleventh hour to pursue his claims. . . . This deliberate delay precludes the possibility of equitable relief."); *Simkins v. Gressette*, 631 F.2d 287, 296 (4th Cir. 1980) (holding that the plaintiffs' delay in bringing a suit until the eve of an election was a sufficient basis to deny their claims); *Smith v. S.C. Election Comm'n*, 874 F. Supp. 2d 483, 498 (D.S.C. 2012) (three-judge court) (holding that a delay of forty days in filing a complaint was sufficient for laches to apply). This is particularly true when, as here, statutes have been in effect for decades before they are challenged.

14

The third is constitutional. The role of courts in our constitutional republic is to interpret the law. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803). It is not to rewrite the law. *See Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938, 1949 (2016). The registration deadline is straightforward, and the Court is bound to apply those provisions as the General Assembly adopted them. *See id.* at 1946 ("The plain text of the [statute] begins and ends our analysis."); *Hodges*, 341 S.C. at 85, 533 S.E.2d at 581 (calling legislative intent the "cardinal rule of statutory construction" and the words of the statute as the best evidence of that intent); *see also* S.C. Const. art. II, § 10 (giving the General Assembly the responsibility to "provide for the administration of elections and for absentee voting"). As a three-judge panel once said in a challenge to election law, "[t]he public has an interest in ensuring that the State's general election is conducted pursuant to state law." *Smith v. S.C. State Election Comm'n*, 901 F. Supp. 2d 639, 649 (D.S.C. 2012) (three-judge court).

At its essence, the SCPN's request is for the Court to rewrite the South Carolina Election Law because of the seriousness of COVID-19 and its effect on the SCPN's ability to interact personally with people. To do so would violate the Constitution and fall into the trap of which Justice Holmes warned in *Northern Securities Co. v. United States*: "Great cases, like hard cases, make bad law" because legal principles give way to the urgency of the moment. 193 U.S. 197, 365 (1904) (Holmes, J., dissenting).

15

## Conclusion

The motion for a temporary restraining order and preliminary injunction should be denied.

Respectfully Submitted,

s/ Wm. Grayson Lambert
Wm. Grayson Lambert
Fed. ID No. 11761
M. Elizabeth Crum
Fed. ID No. 372
Jane W. Trinkley
Fed. ID No. 4143
BURR & FORMAN LLP
Post Office Box 11390
Columbia, SC 29211
(803) 799-9800

*Counsel for Election Defendants*
