UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| SOUTH CAROLINA PROGRESSIVE<br>NETWORK EDUCATION FUND,<br><br>    Plaintiff,<br><br>    v.<br><br>MARCI ANDINO, in her official capacity as<br>Executive Director of the South Carolina<br>State Election Commission; JOHN WELLS,<br>in his official capacity as Chair of the South<br>Carolina State Election Commission; and<br>JOANNE DAY, CLIFFORD J. EDLER,<br>LINDA MCCALL and SCOTT MOSLEY, in<br>their official capacities as members of the<br>South Carolina State Election Commission,<br><br>    Defendants. | Case No. 3:20-cv-03503-MGL |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**PRELIMINARY STATEMENT**

Defendants' opposition to Plaintiff's motion for a Temporary Restraining Order and Preliminary Injunction concedes, effectively, that the State Election Commission ("SEC") is fully capable of extending the voter registration deadline in South Carolina and has no factual basis for claiming that extending that deadline would be a burden, consistent with the SEC's repeated prior admissions that the Voter Registrations Cutoffs need not be 30 days before an election. Defendants nonetheless oppose extending that deadline in the face of an unprecedented pandemic and concomitant state action that have unconstitutionally restricted Plaintiff's associational and free speech rights under the First and Fourteenth Amendments of the US Constitution. Instead of defending their prohibitive statutory deadline, Defendants challenge Plaintiff's likelihood of success on the merits and its standing to bring this claim. Numerous courts have held, in just such circumstances, that organizational plaintiffs *have* standing to challenge such voting laws, and that the COVID-19 pandemic, in combination with state actions relating to it, *does* require holding that an otherwise constitutional statutes is unconstitutional as applied.

In the present case—as Plaintiff has shown through admissible evidence, including the Declaration of Brett Bursey ("Bursey Decl."), which was largely ignored by Defendants—the application of the Voter Registration Cutoffs have created a severe burden on Plaintiff's rights under the US Constitution and, especially in light of the state's failure to claim *any* cognizable burden, justifies immediate relief from this Court, *Middleton v. Andino*, No. 20-2022, Dkt. No. 43, at 7 n.* (4th Cir. Sept. 30, 2020) (King, J., concurring) (it would be an "abdication of the courts' authority and obligation to protect the precious and fundamental right to vote" to not intervene in such exceptional circumstances).

## I. PLAINTIFF HAS SHOWN SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

As Defendants concede, the Supreme Court has directed this Court to "'weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate,' on the one hand, 'against the precise interests put forward by the State as justifications for the burden imposed by its rule,' on the other." Defendants' Memorandum of Law in Opposition to Plaintiff's Motion, Dckt. No. 23 ("Defs' MOL") at 8 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) and *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)) (some internal quotation marks omitted). It is the duty of the district court to "consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). "However slight th[e] burden [on the right to vote] may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks and citations omitted). Thus, even "a regulation which imposes only moderate burdens could well fail the *Anderson* balancing test when the interests that it serves are minor, notwithstanding that the regulation is rational." *McLaughlin v. N. Carolina Bd. of Elections*, 65 F.3d 1215, 1221 n.6 (4th Cir. 1995). Defendants have presented no evidence or argument concerning a burden that arises from the extension of the voter registration deadline.

Defendants' opposition papers—as with their prior practice—that there is no logistical burden on them from extending the registration deadline. *Not once* in their papers do Defendants suggest that they would face any technical or other burden in extending the registration deadline, just as it was extended at the last minute in 2016 and 2018, and as the SEC itself believed it could be extended in 2019. *See* Defs' MOL at 11-13. Defendants point to

2

precisely three possible burdens they face at this moment, not one of which has to be do with registration: (a) a need to defend against lawsuits (a task given to outside counsel, as this case shows), (b) a need to recruit and train poll workers (an argument that bears no relation to the issues before this Court), and (c) "[t]he Election Commission and County Boards, like other organizations, are working to figure out how COVID-19 impacts their operations" and "election officials don't need one more change to make now." *Id.* at 12-13. Respectfully, that is not enough. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) (holding "administrative convenience" cannot justify practices that impinge upon fundamental rights); *see also Ga. Coal. for People's Agenda, Inc.*, 347 F. Supp. 3d at 1268 (holding increased administrative burden of "disseminating information" and "training poll managers. . . is minimal compared to the potential loss of a right to vote"); *United States v. Georgia*, 892 F. Supp. 2d 1367, 1377 (N.D. Ga. 2012) ("The potential hardships that Georgia might experience are minor when balanced against the right to vote, a right that is essential to an effective democracy."); *Fla. Democratic Party v. Detzner*, No. 16 Civ. 607, 2016 WL 6090943, at *8 (N.D. Fla. Oct. 16, 2016) ("Any potential hardship [to the state] imposed by providing the same opportunity . . . for [ ] voters pales in comparison to that imposed by unconstitutionally depriving those voters of their right to vote and to have their votes counted.").

Here, South Carolina "ha[s] an important interest in *promoting* voter participation in the electoral process," *Greenville Cnty. Republican Party Exec. Comm. v. South Carolina*, 824 F. Supp. 2d 655, 671 (D.S.C. 2011) (emphasis added). There is no basis to suggest that the SEC's need to "figure out how COVID-19 impacts their operations" holds a candle to the loss of Plaintiff's associational and free speech rights, or the rights of South Carolinians to exercise their franchise.

To obfuscate this glaring admission, Defendants seeks to recast Plaintiff's argument regarding the burden it faces to make it appear more palatable. Defendants claim that "the registration deadline does not burden the people who actually register to vote," is tautological. Defs' MOL at 8. It is also beside the point, since Plaintiff is suing for its *own* First and Fourteenth Amendment Rights to organize and register potential voters, *see* Plaintiff's Memorandum of Law, Dkt. No. 2 ("Plt.'s MOL") at 3, 5, 6, 8, 11, rights that are well recognized by the courts, *see Anderson*, 460 U.S. at 788 (a state's election laws, including those that "govern[] the registration and qualification of voters," inevitably affect "the individual's . . . right to associate with others for political ends"). The Voter Registration Cutoffs do not just burden Plaintiff's right to carry out this activity; they cut them off entirely.[1]

Defendants misapply the law in arguing that strict scrutiny does not apply to Plaintiff's claim, strangely suggesting that any "organization would be able to challenge countless laws under strict scrutiny." Defs' MOL at 9. As Plaintiff is alleging a violation of a fundamental right under the constitution, not a garden variety claim regarding being inconvenienced by the exigencies of the virus, applying strict scrutiny to the state's actions is entirely appropriate—indeed, necessary under *Anderson-Burdick*—and does not open the door for "every organization" to bring a claim against the state.

---

[1] In an offhand footnote, Defendants claim that more voters voted in the 2020 primary elections than in any election in South Carolina history. Defs' MOL at 9 n.3. That is not surprising, of course, since South Carolina's population is growing. *See* U.S. Census, Quick Facts: South Carolina, https://www.census.gov/quickfacts/SC (South Carolina saw an 11.3% growth in population in 2010-19). Moreover, the state does not challenge Plaintiffs' showing that the number of voters *registering* between primaries and general elections—which almost perfectly coincides with the pandemic this year—has fallen precipitously since the last quadrennial election. *See* Plt.'s MOL at 19 (191,697 additional voters registered between the primaries and general election in 2016; only 77,629 additional voters registered in the same period in 2020). Nor are the numbers everything. As the Fourth Circuit has held, the "basic truth [is] that even one disenfranchised voter—let alone several thousand—is too many." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014).

Defendants also claim that Plaintiff has not "even alleged it has tried to employ the CDC's guidelines" for carrying out its constitutionally protected activities, and thus is somehow at fault for the burden on its constitutional rights. *Id.* at 10. Not so. Plaintiff purchased PPE equipment, bought cleaning supplies, and developed health and safety protocols for doing its work, Bursey Decl. ¶ 37, transitioned to having in-person meetings with the attendees in masks, Bursey Decl. ¶ 39, provided masks to youth volunteers engaged in door-knocking campaigns, Bursey Decl. ¶ 44, all to little avail. Recently—with the reemergence of public events and the ability to do more robust in-person registration work—Plaintiff's volunteers have been doing voter registration events using appropriate social distancing protocols. *Id.* ¶¶ 59-65. Plaintiff has tried its hardest to advance its constitutionally protected mission in these unprecedented times, but it has unfortunately been thwarted.

## II. PLAINTIFF HAS STANDING AND THIS CASE IS AN APPROPRIATE VEHICLE FOR THE COURT TO VINDICATE ITS CONSTITUTIONAL RIGHTS

Defendants argue that Plaintiff lacks standing, primarily on the basis that Plaintiff has not alleged the "traceability" and "redressability" requirements under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Defs' MOL at 4-7. On traceability, Defendants claim that Plaintiff's injury-in-fact (which Defendants do not seriously dispute) is not traceable to Defendants, but rather to the pandemic, and is hence not constitutionally sufficient to confer standing. *Id.* at 5-6. Defendants' position is at odds with the decisions from district courts in Florida and Georgia—and the Richland Country Court of Claims in South Carolina—to extend the voter registration deadlines in 2018 on the basis that Hurricane Florence had made the statutory deadlines unconstitutionally restrictive. *See* Defs' MOL at 11 (citing *Florida Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016), and *Georgia Coalition for the Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344 (S.D. Ga. 2016)). Hurricane Florence was

5

not state action—no more than the global pandemic is—but the state's *response* or *lack of response* in enforcing stringent Voter Registration Cutoffs is state action in both cases. And Defendants' argument regarding Plaintiff's lack of standing due to traceability would equally apply to almost *every* lawsuit regarding election laws this year, where standing was found due to a combination of state and non-state action. *See See, e.g.*, *Fair Maps Nev. v. Cegavske*, No. 20 Civ. 271, 2020 WL 2798018, at *14–16 (D. Nev. May 29, 2020); *Democratic Nat'l Comm. v. Bostelmann*, No. 20 Civ. 249, 2020 WL 5627186, at *17–22 (W.D. Wis. Sept. 21, 2020); *Esshaki v. Whitmer*, 813 Fed. App'x 170, 171 (6th Cir. 2020); *Gallagher v. N.Y. State Bd. of Elections*, No. 20 Civ. 5504, 2020 WL 4496849, at *16–18, 23 (S.D.N.Y. Aug. 3 2020); *Libertarian Party of Ill.*, 2020 WL 1951678, at *2–5. Notably, the *Middleton* court has similarly found standing in a case that is *diametrically* contrary to Defendants' sole cited authority (*Clark v. Edwards*, No. CV 20-283-SDD-RLB, 2020 WL 3415376 (M.D. La. June 22, 2020)). *See Middleton v. Andino*, No. 3:20-CV-01730-JMC, 2020 WL 5591590, at *14 (D.S.C. Sept. 18, 2020), *stay request denied and interim stay vacated*, No. 20-2022 (4th Cir. Sept. 25, 2020) (enjoining enforcement of South Carolina's mail-in absentee ballot witness signature requirement, and finding that the "alleged injury is fairly traceable to Defendants" and "could be judicially redressed by the requested relief").

Defendants' claim that Plaintiff has not demonstrated redressability simply ignores the evidence to the contrary Plaintiff submitted. Defs' MOL at 6-7. Defendants argue that, "[e]ven if the Court were to extend the registration deadline, there's no way to know whether the SCPN could engage in its in-person registration efforts any more successfully now than it has for the last several months, for all or even part of the extended window." *Id.* at 6. But that is *precisely* what Plaintiff *has* shown in its papers.

6

As the sworn declaration of Plaintiff's Executive Director states, "[i]f the voter registration deadline were extended, we would be able to register additional voters, both through in-person and remote contacts." Bursey Decl. ¶ 65. And that assertion is backed up by facts: just in the last few weeks, Plaintiff's efforts have expanded into new counties, *id.* ¶ 51, its traditional volunteers have started to attend in-person events and registered 21 people in-person last Monday, *id.* ¶ 57, its youth volunteers have begun to *organize* in-person events, *id.* ¶ 58, and have started to participate in major socially-distanced (but in-person) initiatives like the "Black Votes Matter" roadshow, *id.* ¶ 64. If the registration Cutoffs were pushed back, Plaintiff has identified multiple concrete steps it would be able to do to continue to register votes. *Id.* ¶ 65. Indeed, since he submitted his initial declaration, Mr. Bursey has learned that "traditional MVP" volunteers were successful in registering an additional 89 people through face-to-face activity in just the last week. Supplemental Declaration of Mr. Bursey, ¶ 2. In short, it is clear that the ability to engage in the "traditional MVP" has allowed substantially more voter registration work, which was only possible in the last week. *Id.* ¶ 4.

Plaintiff's recent ability to do in-person registrations is also the answer to Defendants' "due diligence" and laches argument, Defs' MOL at 14. Plaintiff plainly made its best efforts to address the fact of the pandemic and the state restrictions, including through extensive efforts over the summer to implement a "Pandemic Model." Bursey Decl. ¶¶ 33-44. It hoped that, by the fall, things would turn around in South Carolina and its efforts could pick back up, but that did not occur. *Id.* ¶¶ 45-46. Had Plaintiff sought to file suit in August or even in early September, it *would* have had a redressability problem because it would have been unclear whether an extension to the deadline would make any difference to its efforts. Now, however, only in the last two or three weeks, Plaintiff has seen its efforts come to fruition, which has

7

allowed it to both carry out its constitutionally protected registration work and to seek relief from this Court. That is the relief this Court should grant.

Finally, contrary to Defendants, Defs' MOL at 7-8, *Purcell* does not counsel otherwise. "[T]he factors that animated the Supreme Court's concern in *Purcell* are not present" here because "the injunction at issue here does not involve any change at all to the actual election process." *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 368 (9th Cir. 2016). An extension of the voter registration period would simply allow more people to register and vote using the processes already in place. "[I]n our case, in contrast to *Purcell*, an injunction will not confuse election officials or deter people from going to the polls for fear that they lack the requisite documentation. The election process is unaffected." *Id.*; *see also Ariz. Democratic Party v. Hobbs*, No. 20 Civ. 1143, 2020 WL 5423898, at *13 (D. Ariz. Sept. 10, 2020) ("Plaintiffs are not asking election officials to devise new rules out of whole cloth. They are asking those officials to continue applying the same procedures they have in place now, but for a little longer."); *Democratic Nat'l Comm. v. Bostelmann*, 447 F. Supp. 3d 757, 770 (W.D. Wis. 2020) (rejecting *Purcell* argument because "some accommodation is necessary to preserve citizens' right to vote amidst this unprecedented public health crisis"); *People Not Politicians Or. v. Clarno*, No. 20 Civ. 1053, 2020 WL 3960440, at *7 (D. Or. July 13, 2020) (rejecting *Purcell* argument because "when these rules collide with unprecedented conditions that burden First Amendment access to the ballot box, their application must temper in favor of the Constitution."); *Middleton v. Andino*, No. 3:20-CV-01730-JMC, 2020 WL 5591590, at *21 (D.S.C. Sept. 18, 2020) (refusing to apply *Purcell* to an election injunction that would, in fact, affect the election process).

## CONCLUSION

Plaintiff thus respectfully requests that the Court enter a temporary restraining order and preliminary injunction extending the deadline to a date no earlier than October 19, 2020.

Dated: Columbia, SC
October 5, 2020

| | |
|---|---|
| **BURNETTE SHUTT MCDANIEL** | **EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP** |
| By:    s/Jack E. Cohoon | Matthew D. Brinckerhoff* |
| | Jonathan S. Abady* |
| Jack E. Cohoon (Fed. ID No. 9995) | Debra L. Greenberger** |
| 912 Lady Street, 2nd Floor | Ananda V. Burra* |
| P.O. Box 1929 | 600 Fifth Avenue, 10th Floor |
| Columbia, South Carolina 29202 | New York, New York 10020 |
| P: (803) 850-0912 | P: (212) 763-5000 |
| F: (803) 904-7910 | F: (212) 763-5001 |
| jcohoon@burnetteshutt.law | mbrinckerhoff@ecbawm.com |
| | jabady@ecbawm.com |
| | dgreenberger@ecbawm.com |
| | aburra@ecbawm.com |
| | |
| | **FREE SPEECH FOR PEOPLE** |
| | John Bonifaz*** |
| | Gillian Cassell-Stiga** |
| | Ben Clements** |
| | Ronald Fein** |
| | 1320 Centre Street, Suite 405 |
| | Newton, Massachusetts 02459 |
| | (617) 249-3015 |
| | jbonifaz@freespeechforpeople.org |
| | gillian@freespeechforpeople.org |
| | bclements@freespeechforpeople.org |
| | rfein@freespeechforpeople.org |
| | |
| | *Attorneys for Plaintiff* |

*Motions for admission pro hac vice granted*
**Motions for admission pro hac vice pending*
***Motions for admission pro hac vice forthcoming*