IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| South Carolina Progressive Network Education Fund, | ) ) ) | Civil Action No. 3:20-cv-03503-MGL |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| Marci Andino, in her official capacity as Executive Director of the South Carolina State Election Commission; John Wells in his official capacity as Chair of SC State Election Commission; and JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Mosley, in their official capacities as Members of the South Carolina State Election Commission, | ) ) ) ) ) ) ) ) ) ) ) | MOTION TO INTERVENE BY PRESIDENT PEELER AND SPEAKER LUCAS |
| Defendants. | ) ) | |

## INTRODUCTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Harvey Peeler, in his capacity as President of the South Carolina Senate, and James H. ("Jay") Lucas, in his capacity as Speaker of the South Carolina House of Representatives, move to intervene as defendants in the above-captioned action, which improperly challenges as a constitutional matter the statutory deadline to register to vote in South Carolina.

Respectfully, this lawsuit is frivolous—there is no constitutional right to wait until the last minute to register to vote or to coordinate a voter-registration drive—but in any event, the existence of the coronavirus should not prompt the Court to set aside longstanding notions of federal–state comity and separation of powers. Nor can a virus render lawful election procedures unconstitutional, as the Plaintiffs urge.

Because President Peeler and Speaker Lucas have been specifically authorized by the South Carolina General Assembly to intervene in litigation challenging the constitutionality of state law, and because neither the Election Commission nor Ms. Andino have any authority to speak for the State with respect to establishing South Carolina's election law, the Court should grant this motion and allow legislative leadership to appear in this matter.

## STANDARD FOR INTERVENTION

Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Similarly, Rule 24(b)(1)(B) permits intervention as a matter of the Court's discretion when the movant "has a claim or defense that shares with the main action a common question of law or fact."

In either instance, "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

## ARGUMENT

**I.    Legislative leadership is entitled to intervene as a matter of right, as only the South Carolina General Assembly can assert and defend the interests that are committed to the Legislature's exclusive jurisdiction by the South Carolina Constitution.**

In order for President Peeler and Speaker Lucas to intervene as a matter of right, they must show that this application is timely, that they have "an interest in the subject matter of the underlying action," that they are unable to protect that interest if not allowed to intervene, and that

2

their interest is "not adequately represented" by the existing litigants. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). They readily meet these criteria.

**Timeliness:** The complaint was filed on October 2, 2020. This motion is filed only a handful of business days after the complaint was filed, and before the Court has taken any action. Accordingly, this motion meets Rule 24's timeliness requirement.

**Interests in Subject Matter:** The South Carolina Constitution exclusively commits the subject matter of this litigation to the South Carolina General Assembly—not to private litigants, not to the executive branch, and, respectfully, not to the federal or state judiciary. *See* S.C. Const. art. II, § 10 ("The General Assembly shall provide for the nomination of candidates, regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, insure secrecy of voting, establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process."); *id.* art. I, § 7 ("The power to suspend the laws shall be exercised only by the General Assembly or by its authority in particular cases expressly provided for by it.").

As legislative leadership, President Peeler and Speaker Lucas have a significant interest in upholding South Carolina's constitutional structure, as well as its election laws. In this regard, the Legislature has an interest in preventing uncertainty and mass confusion that would necessarily follow rewriting portions of the Election Code through the litigation process—with the prospect of appeals, stays, and other procedural devices—on the eve of the next election. *See generally Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (reiterating that "[t]his Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election," in part because of a need to avoid "judicially created confusion" regarding elections).

The Legislature also has an interest in ensuring that federal–state comity remains intact and separation-of-powers norms are properly preserved, as the Plaintiffs are asking the Court to review a long-established part of South Carolina's election law and, under the guise of a constitutional analysis, declare that South Carolina law does not do "enough" with respect to voter registration during the COVID-19 pandemic. This is especially overreaching in light of the fact that circumstances surrounding COVID-19 have been present for months. That the Plaintiffs have waited until the last minute to run a voter-registration drive is their own fault, not that of COVID-19, and certainly not that of the State of South Carolina.

Policy judgments, such as when to set a deadline for voters to register in advance of an election, are political, not legal, questions that are rightly addressed by (and constitutionally committed to) the South Carolina General Assembly. *See, e.g.*, *Coalition for Good Governance v. Raffensperger*, Case No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996, at *6–10 (N.D. Ga. May 14, 2020) (dismissing claims regarding Georgia's absentee voting as the plaintiffs' present here because "they present a nonjusticiable political question"); *Duggins v. Lucas*, Case No. 27996, 2020 S.C. LEXIS 137, at *2 (Sept. 23, 2020) (dismissing a challenge to South Carolina's Election Code because evaluating any changes needed to that law in light of COVID-19 was within the purview of the General Assembly); *Bailey v. S.C. State Election Comm'n*, 844 S.E.2d 390, 392–94 (S.C. 2020) (dismissing a challenge to South Carolina's Election Code in the wake of the COVID-19 pandemic as a nonjusticiable political question).

Accordingly, President Peeler and Speaker Lucas undoubtedly have a material interest in these cases that justifies intervention as a matter of right.

**Unable to Protect Interests:** If the Court denies intervention, the Legislature will be unable to protect the Senate's and the House's interests outlined above. In particular, there is no

way for the General Assembly to protect its policy judgments if the Court accepts the Plaintiffs' invitations to rewrite the South Carolina Election Code through litigation. Nor will they be able to assert and protect the interests associated with election laws that are unique to the General Assembly; namely, the exclusive authority to draft and, if necessary, modify or suspend them that is vested in the Legislature by the South Carolina Constitution.

**Not Adequately Represented by Existing Parties:** Finally, none of the existing parties can adequately represent President Peeler's or Speaker Lucas's interests in this litigation. None of the existing defendants are elected officials, and none have any responsibility with respect to establishing laws that govern South Carolina's elections. Yet, the core of the Plaintiffs' case is based on alleged remarks and past conduct by the existing defendants that, in the Plaintiffs' view, provide a basis for the Court to accept the Plaintiffs' invitation to rewrite South Carolina's election law for purposes of the upcoming election. In light of that posture, President Peeler and Speaker Lucas cannot passively rely on the existing defendants to assert arguments that preserve and protect the General Assembly's exclusive role when it comes to establishing the State's election laws.

Nor are the existing defendants charged with defending the constitutionality of state laws or the political judgments and processes of the South Carolina General Assembly. By contrast, President Peeler and Speaker Lucas are. *See* 2019–20 Appropriations Act § 91.26 (vesting the President of the Senate and the Speaker of the House of Representatives with the authority to seek to intervene in federal litigation in cases where the constitutionality of a state statute or "any action of the Legislature" is challenged).

The Court has previously recognized that such legislation authorizes intervention as a matter of right for state legislative leaders. *See, e.g.*, *SCE&G v. Whitfield*, Case No. 3:18-cv-1795-

JMC, 2018 U.S. Dist. LEXIS 120174, at *11 (D.S.C. July 18, 2018) ("Additionally, if a state statute or legislative act gives legislative leaders authority to defend legislative enactments, then the legislative leaders are able to intervene as a matter of right.").

Accordingly, President Peeler and Speaker Lucas have a right to intervene in this matter, and respectfully request that the Court allow them to do so pursuant to Rule 24(a)(2).

**II.     Alternatively, legislative leadership should be permitted to intervene because the interests they seek to assert and defend are put squarely at issue by the Plaintiffs' requests that the Court rewrite the South Carolina Election Code to account for the COVID-19 pandemic.**

If the Court does not believe that President Peeler and Speaker Lucas have a right to intervene, it should still permit them to intervene. As this Court has recognized in other litigation regarding the State Election Code during this same election cycle, Rule 24(b) "should be construed liberally in favor of intervention." *Thomas v. Andino*, Case No. 3:20-cv-1552-JMC, 2020 U.S. Dist. LEXIS 81630, at *8 (D.S.C. May 8, 2020) (quoting *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, Case No. 9:12-610-RMG, 2012 U.S. Dist. LEXIS 200026, at *7 (D.S.C. Aug. 14, 2012)). Permissive intervention should be allowed when a motion is timely filed, when the movant asserts a common question of law or fact to that already presented in the case, and when the intervention will not unduly delay the litigation. *SCE&G*, 2018 U.S. Dist. LEXIS 120174, at *9.

As explained above, this motion is timely filed, as this case is not even a week old, and the addition of legislative leadership at the outset of litigation will not cause any delay or prejudice any of the other litigants.

Likewise, President Peeler's and Speaker Lucas's position in this case arises exclusively from the same laws that are presented in the complaint, as the Plaintiffs ask the Court to rewrite South Carolina's voter-registration laws. The Legislature's interest in this case—defending the

South Carolina Election Code, in particular, and the primacy of the General Assembly in setting the state's election laws as required by the South Carolina Constitution, in general—is squarely within the scope of the issues that the Plaintiffs have presented to the Court.

Accordingly, President Peeler and Speaker Lucas should be permitted to intervene in these cases to protect the South Carolina General Assembly's interests that are at issue in, and jeopardized by, this litigation, just as the Court has previously permitted. *See, e.g.*, *Thomas v. Andino*, Case No. 3:20-cv-1552-JMC, 2020 U.S. Dist. LEXIS 154244, at *17–18 (D.S.C. Aug. 24, 2020) (permitting President Peeler and Speaker Lucas to permissively intervene in litigation challenging other aspects of the State Election Code due to COVID-19); *Middleton v. Andino*, Case No. 3:20-cv-1730-JMC, 2020 U.S. Dist. LEXIS 152138, at *16–17 (D.S.C. Aug. 21, 2020) (same).

**III. If this motion is granted, President Peeler and Speaker Lucas intend to seek dismissal of these matters as presenting issues that are not proper for judicial resolution, particularly on the eve of an election, and to defend the legality of the challenged statutes if the Court believes that this case is properly before it.**

Pursuant to Rule 24(c), President Peeler and Speaker Lucas want to ensure there is no doubt as to their position in these matters if the Court grants this motion. *See SCE&G*, 2018 U.S. Dist. LEXIS 120174, at *6 n.4 (providing that a potential intervenor need not attach a proposed pleading to its motion to intervene as long as the motion "provides notice to the court and the parties of his intention in the case"). Their position on the issues of this litigation are as follows:

**Untimely Complaint and Nonjusticiable Issues:** The issues of this case are exclusively committed to the South Carolina General Assembly for resolution. *See* S.C. Const. art. II, § 10 ("The General Assembly shall provide for the nomination of candidates, regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, insure secrecy of voting, establish procedures for contested elections, and enact other provisions

necessary to the fulfillment and integrity of the election process."). However, the Plaintiffs are asking the Court to substitute its policy judgment, all under the guise of a constitutional analysis, regarding the statutory deadlines to register to vote in South Carolina's elections.

The Supreme Court has been clear that federal courts must stay out of such challenges to state election laws, particularly when they arise on the eve of an election. It reiterated that point just yesterday when it stayed an order from the District of South Carolina that attempted to suspend part of the State Election Code on supposedly constitutional grounds in light of COVID-19. *See Andino v. Middleton*, 592 U.S. ___, ___ (Oct. 5, 2020) (Kavanaugh, J., concurring) (explaining that the District of South Carolina's injunction must be stayed because federal courts should not second-guess the judgment of state officials when setting election laws during the current pandemic, and because "for many years, this Court has repeatedly emphasized that federal courts ordinarily should not alter state election rules in the period close to an election") (copy of opinion attached). The Court should dismiss this case accordingly.

**Challenged Laws Are Constitutional:** President Peeler and Speaker Lucas believe that the laws that are being challenged are constitutional, for at least the reasons argued by the Election Commission in its opposition to the motion for a preliminary injunction. The Plaintiffs have no standing to bring this case. They have no constitutional right to wait until the eve of an election to register to vote, or to coordinate a voter-registration drive. And the laws that they are challenging are imminently reasonable, non-discriminatory, and essential to the orderly conduct of an election. This case is meritless.

## CONCLUSION

For the reasons explained above, President Peeler and Speaker Lucas respectfully request that the Court grant this motion and allow them to intervene in this case. President Peeler and

8

Speaker Lucas further state that they did not have an opportunity to consult with counsel of record prior to filing this motion because time is of the essence, as one of the deadlines that the Plaintiffs are challenging has already passed and the other is imminent.

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: /s/ M. Todd Carroll
    Federal Bar No. 9742
    todd.carroll@wbd-us.com
    Kevin A. Hall
    Federal Bar No. 5375
    kevin.hall@wbd-us.com
    1221 Main Street, Suite 1600
    Columbia, South Carolina 29201
    803-454-6504

*Attorneys for Senator Harvey Peeler, in his capacity as President of the South Carolina Senate*

NEXSEN PRUET, LLC

    Susan P. McWilliams
    Federal Bar No. 3351
    smcwilliams@nexsenpruet.com
    Marc C. Moore
    Federal Bar No. 4956
    mmoore@nexsenpruet.com
    1230 Main Street, Suite 700
    Columbia, SC 29201
    (803) 253-8221

*Attorneys for Representative James H. Lucas, in his capacity as Speaker of the South Carolina House of Representatives*

October 6, 2020
Columbia, South Carolina