

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| SOUTH CAROLINA PROGRESSIVE NETWORK EDUCATION FUND,<br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>MARCI ANDINO, *in her official capacity as Executive Director of the South Carolina State Election Commission*; JOHN WELLS, *in his official capacity as Chair of the South Carolina State Election Commission*; and JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL and SCOTT MOSLEY, *in their official capacities as members of the South Carolina State Election Commission*,<br>　　　　　　　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:20-03503-MGL |

**<u>MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTIONS
FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION</u>**

### I.　　INTRODUCTION

This is an election law case. The plaintiff is the South Carolina Progressive Network Education Fund (the Network). It filed its lawsuit against Marci Andino, in her official capacity as Executive Director of the South Carolina State Election Commission; John Wells, in his official capacity as Chair of the South Carolina State Election Commission; and Joanne Day, Clifford J. Edler, Linda McCall and Scott Mosley, in their official capacities as members of the South Carolina State Election Commission (collectively, Defendants).

In the Network's complaint, it alleges a severe undue burden on its right to register voters in violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment, as applied to the South Carolina voter registration deadline during the COVID-19 pandemic. The Court has jurisdiction over the matter in accordance with 28 U.S.C. § 1331.

Pending before the Court are the Network's motions for a temporary restraining order and a preliminary injunction, both asking the Court, among other things, to "[o]rder Defendants to extend the Voter Registration Cutoffs to a date no sooner than October 19, 2020[, ]" Complaint at 27.

Having carefully considered the motions, the response, the reply, the supplements, the record, and the relevant law, the Court is of the opinion the motions must be denied.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     *Factual History*

"[T]he Network is a non-partisan and not-for-profit organization working to register voters ahead of the November election." Complaint ¶ 5.

"This year, South Carolina, like the rest of the country and world, is grappling with the devastating and enduring effects of the COVID-19 pandemic[.]" *Id*. ¶ 4. Since "April 6, 2020, when South Carolina imposed a stay-at-home order and other restrictions on day-to-day interactions . . . to mitigate the effects of the pandemic, . . . the Network was effectively prevented from registering voters in the normal course of its activities and was forced into a much less effective 'pandemic mode' of registration." *Id*. ¶ 6

"The Network tried to register as many voters as possible ahead of the Voter Registration Cutoffs notwithstanding the pandemic conditions, and adapted to these new circumstances. . . .

Unless the Voter Registration Cutoffs are extended, the Network will not be able to register eligible voters that they would have been able to reach in a normal year. As a result, many South Carolinians will be disenfranchised." *Id*. ¶ 7.

"South Carolina requires that all voters register to vote no later than [thirty] days before the election." Complaint ¶ 2 (citing S.C. Code Ann. § 7-5-150). "That means that any South Carolinian who wishes to vote in this year's election on November 3, 2020[,] [was required to] register by Sunday, October 4, 2020. Because many county, in-person facilities are closed on weekends, some voters [had] to register in-person by Friday, October 2, 2020." *Id*. ¶ 3. "The cut off for internet-based registrations [was] October 4 and mailed registrations [were required to] be postmarked by October 5." *Id*.

In the sworn declaration of Brett Bursey, the Network's Executive Director, he attests, "[i]f the voter registration deadline were extended, [the Network] would be able to register additional voters, both through in-person and remote contacts." Bursey Decl. ¶ 65. He further states that "an extension of the voter registration deadline would serve the public interest amidst the pandemic and would enable [the Network] to successfully register significantly more South Carolinians." *Id.* ¶ 71.

The Network, in their prayer for relief, requests the Court to:

    a.    Preliminarily and permanently enjoin Defendants from enforcing the Voter Registration Cutoffs this election cycle;

    b.    Order Defendants to extend the Voter Registration Cutoffs to a date no sooner than October 19, 2020;

    c.    Declare that enforcement of the Voter Registration Cutoffs as applied under the pandemic conditions in South Carolina is unconstitutional in violation of the First and Fourteenth Amendments;

    d.    Award [the Network] reasonable attorneys' fees and costs;

> e. Retain jurisdiction to ensure all Defendants' ongoing compliance with the foregoing orders; and
>
> f. Grant such other and further relief that this Court deems just and appropriate.

Complaint at 27-28.

### B. Procedural History

The Network filed its lawsuit and motions for a temporary restraining order and preliminary injunction on the same day. Defendants subsequently filed a response in opposition to the motions, after which both parties filed supplements to their earlier filings. Thereafter, the Network filed a reply in support of its motions.

The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the two motions.

## III. STANDARDS OF REVIEW

### A. Article III Standing

"Article III of the Constitution provides that federal courts may consider only '[c]ases' and '[c]ontroversies.'" U.S. Const. art. III, § 2. Thus, "a plaintiff seeking relief in federal court must first demonstrate that [it] has standing to do so, including that [it] has a personal stake in the outcome[.]" *Gill v. Whitford*, 138 S.Ct. 1916, 1923 (2018) (citation omitted) (internal quotation marks omitted).

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury in fact

is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548.

When the Court undertakes a standing analysis, it views the evidence in the light most favorable to the plaintiff. *See United States v. Phillips*, 883 F.3d 399, 405 (4th Cir. 2018) (stating that, in questions concerning standing, the Court "view[s] the evidence in the light most favorable to [the plaintiff] and draw all reasonable inferences in [its] favor.").

### B.   Factors to consider in the granting motions for a temporary restraining order and a preliminary injunction

The substantive standards for granting a request for a temporary restraining order and entering a preliminary injunction are the same. *See Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (applying the preliminary injunction standard to a request for a temporary restraining order).

Both "are intended to meet exigent circumstances[.]" *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 84 (3d Cir. 1982). They are "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "[T]he party seeking [either of these types of relief] must prove [its] own case and adduce the requisite proof, by a preponderance of the evidence, of the conditions and circumstances upon which [it] bases the right to and necessity for injunctive relief." *Citizens Concerned for Separation of Church & State v. City of Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980).

A temporary restraining order and a preliminary injunction should issue only when the plaintiff can "[1] establish that [it is] likely to succeed on the merits, [2] that [it is] likely to suffer irreparable harm in the absence of [temporary or] preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that [injunctive relief] is in the public interest." *Winter*, 555 U.S. at 20. The burden is on the party seeking injunctive relief to show it is entitled to the relief, not the burden

of the other party to show the movant is not entitled. *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 443 (1974).

"[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009). Thus, even a strong showing of likely success on the merits cannot compensate for failure to show likely injury. *Winter*, 555 U.S. at 21-22. And, irreparable injury alone is insufficient to support equitable relief. *See id.* at 23 (holding irreparable injury was likely to occur, but holding injunctive relief was improper because of the burden on the government and the impact on public interest). In other words, "[a temporary restraining order or a] preliminary injunction shall be granted only if the moving party clearly establishes entitlement." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

"Given [the] limited purpose [of a temporary restraining order and a preliminary injunction], and given the haste that is often necessary . . . , [they are] customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Because [the] proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a [temporary restraining order or] preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017).

### C.     *Prohibitory or mandatory injunctive relief*

Injunctive relief "may be characterized as being either prohibitory or mandatory." *League of Women Voters of N. C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014). "Whereas

mandatory [temporary restraining orders and preliminary] injunctions alter the status quo [generally by requiring the non-movant to do something], prohibitory [ones] aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Id.* at 236 (citation omitted) (internal quotation marks omitted). The Fourth Circuit has "defined the status quo for this purpose to be the last uncontested status between the parties which preceded the controversy." *Id.* (citation omitted) (internal quotation marks omitted).

"Mandatory . . . injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994) (citation omitted). Or, put differently, "It is fundamental that mandatory injunctive relief should be granted only under compelling circumstances inasmuch as it is a harsh remedial process not favored by the courts." *Citizens Concerned for Separation of Church & State*, 628 F.2d at 1299.

The Fourth Circuit has stated, "Because [temporary restraining orders and] preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power, [it] should be particularly exacting in its use of the abuse of discretion standard when it reviews an order granting [injunctive relief]." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citations omitted) (internal quotation marks omitted) (alteration marks omitted). "Furthermore, when the [injunctive relief] is mandatory rather than prohibitory in nature, [the Fourth Circuit's] application of this exacting standard of review is even more searching." *Id.* (citation omitted) (internal quotation marks omitted).

**IV.    DISCUSSION AND ANALYSIS**

As a preliminary matter, "Rule 65 does not require an evidentiary hearing[,]" so long as "the party opposing [the injunctive relief has] a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc.*, 415 U.S. at 433 n.7.  The Court must ensure, however, "relief follows only after consideration of all facts and arguments deemed important by the parties."  *Drywall Tapers & Pointers of Greater NYC, Local 1974 v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Can.*, 537 F.2d 669, 674 (2d Cir. 1976).

In *Drywall Tapers*, the Second Circuit held "the documentary evidence presented to [the district court] by both sides was sufficient to . . . enable the court to decide whether [injunctive relief] should issue."  *Id*.  And, as that court noted, the plaintiffs "were obviously content to rest on that evidence, as they never requested a . . . hearing."  *Id*.

Defendants have had "a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc.*, 415 U.S. at 433 n.7.  And, neither party requested a hearing.  Further, inasmuch as the Court will decide the Network's motions as a matter of law, it is unnecessary for the Court to consider any evidence the parties might wish to present at a hearing.  Accordingly, the Court will decide the Network's motions without a hearing.  *See* Local Civil Rule 7.08 ("Unless so ordered, motions may be determined without a hearing.").

   *A.    Whether the Network has standing to bring this lawsuit*

Defendants have challenged the Network's standing to bring this lawsuit.  Thus, the Court must decide that issue before it can consider the merits of the Network's constitutional claims.  *See Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) ("[A]ny [organization] invoking the power of a federal court must demonstrate standing to do so.").

The Court is well aware that some have insisted standing arguments are often employed to keep the courthouse doors closed on many plaintiffs' claims. *See* Sydney M. Irmas, *Closing the Courthouse Doors to Civil Rights Litigants*, 5 U. Pa. J. Const. L. 537, 539 (2003) ("[C]losing the courthouse doors is not a new technique for a conservative court to use to undermine rights. During the early years of the Burger Court, it did this by increasing standing as a barrier to civil rights litigation."). Nevertheless, although the Court is cognizant of such jurisdictional gamesmanship, that is not what is present here.

As the Court has already stated, for a plaintiff to show it has standing, it "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 136 S. Ct. at 1547.

For purposes of these two motions, there appears to be no dispute the Network satisfies the injury-in-fact prong. Turning then to the traceability element, the Network states it has met this requirement. Defendants say it has not.

In the sworn declaration of Bursey, which the Court quoted from above, he also states that the Network's "mission is to promote—through education and action—human, civil, and workers' rights, reproductive freedom, environmental protection, and government reform[.]" Bursey Decl. ¶ 2. "Integral to [that] mission is ensuring the substantive engagement of all citizens in the civic affairs of state and local governments, including by educating people about voting and registering people to vote." *Id*. ¶ 3.

Arguably, Defendants are standing in the way of the Network's mission of "registering people to vote[,]" *id.*, by enforcing the current voter registration deadline. Thus, viewing the evidence in the light most favorable to the Network, the Court concludes it has satisfied the traceability element.

Concerning the redressibility factor of standing, the Network contends it has shown that, if the Court extended the deadline for voter registration, the Network's registration efforts would be more successful in the coming days than they have been for the last several months. Defendants take the opposite view.

As the Court noted earlier, in Burney's sworn declaration, he states, "[i]f the voter registration deadline were extended, we would be able to register additional voters, both through in-person and remote contacts." Bursey Decl. ¶ 65. "[A]n extension of the voter registration deadline would serve the public interest amidst the pandemic and would enable us to successfully register significantly more South Carolinians." *Id.* ¶ 71.

The Court accepts this evidence as true for purposes of this Order. Thus, the Network has satisfied the three requirements needed to establish it has standing to bring this lawsuit.

###   B.     *Whether the Network is able to establish that it is likely to succeed on the merits*

Turning to the first requirement the Network must satisfy to establish it is due the injunctive relief it seeks, the Network claims it is likely to succeed on the merits of its claims. In so doing, it insists (1) "the voter registration cutoffs violate [its] First and Fourteenth Amendment Rights[,]" The Network's Motions at 6, (2) "the burden imposed by the voter registration cutoffs is severe[,]" *id*. at 8, (3) "no state interest sufficiently justifies the voter registration cutoffs[,]" *id*. at 20, (4) "Defendants cannot justify the severe burden on [the Network's] constitutional rights[,]" *id*. at 21, and (5) "any inconvenience to . . . Defendants will be minimal," *id*. at 25 (emphasis omitted) (capitalization of some letters modified).

Defendants attack these arguments. But, it is the application of the *Purcell* principle, which the Court will explain below, that has convinced the Court the Network is incapable of establishing that it is likely to succeed on the merits of its lawsuit.

The Network filed its last-minute lawsuit against Defendants at 4:14 P.M. on Friday, October 2, 2020; and it filed its eleventh-hour motions for a temporary restraining order and a preliminary injunction at 5:04 P.M. on the same date. Unfortunately for the Network, this bad timing is dispositive. Put differently, the untimeliness of those filings has ultimately led to the Network's undoing in this action. This, alone, is fatal to its claims. Consequently, it is fair to say the Network's lawsuit began, and effectively ended, when it filed its lawsuit.

As of the date of this order, we are twenty-five days from the next national election. And, the Supreme Court has counseled the federal courts that "Court orders affecting elections . . . can . . . result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam) (*Purcell*, or the *Purcell* principle).

The Supreme Court has repeated this admonition time and again this year, both directly and indirectly, in reasoned opinions and unexplained orders, when presented with cases in which the district court granted injunctive relief in election-related matters close to the election date. *See, e.g., Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S.Ct. 1205, 1207 (2020) (per curiam) (citing to the *Purcell* principle, staying the district court's order granting a preliminary injunction requiring Wisconsin to count absentee ballots postmarked after the state's presidential primary, and stating, "By changing the election rules so close to the election date . . . , the District Court contravened this Court's precedents and erred by ordering such relief. This Court has repeatedly

11

emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."), *Merrill v. People First of Ala.,* No. 19A1063, 2020 WL 3604049, at *1 (U.S. July 2, 2020) (per curiam) (staying, without explanation, the district court's order enjoining of the Alabama witnesses and photo identification requirement for absentee voting).

And then, while this matter was pending, on October 5, 2020, the Supreme Court granted the defendants' application for a stay of the district court's order enjoining enforcement of the South Carolina witness requirement for absentee voting. *Andino v. Middleton*, No. 20A55, 2020 WL 5887393, at *1 (U.S. Oct. 5, 2020) (per curiam). In Justice Kavanaugh's concurrence, citing to *Purcell,* he states that the Supreme Court "has repeatedly emphasized that federal courts ordinarily should not alter state election rules in the period close to an election." *Id*. (Kavanaugh, J., concurring). "By enjoining South Carolina's witness requirement shortly before the election, the District Court defied that principle and this Court's precedents." *Id*.

Nevertheless, in the Network's reply, it maintains "'the factors that animated the Supreme Court's concern in *Purcell* are not present' here because 'the injunction at issue here does not involve any change at all to the actual election process.'" The Network's Reply at 8 (quoting *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 368 (9th Cir. 2016)). But, this is simply not so. No discussion is merited. Period.

Further, in the Network's reply and supplement, it cites to several courts that seek to distinguish *Purcell* from the facts of the cases before them. The Court need not analyze each one here. Suffice it to say the Court rejects the notion it should be persuaded by the reasoning of those courts for one or more of the following two reasons: (1) the Court respectfully disagrees with the

other court's conclusions, and/or (2) the Court thinks the facts presented in those cases are too dissimilar to those present here to be of any help.

The arguments for and against the Network's motions are many. But, the Court's holding is narrow: in light of *Purcell* and other Supreme Court precedent the Court has detailed above, it concludes the Network is incapable of showing it is likely to prevail on the merits of its lawsuit against Defendants inasmuch as the Court is unable to order the change in election law the Network seeks so close to the November 3, 2020, election.

Of course, *Purcell* does not lay out a bright-line rule that the courts should never order a change to election-related proceedings close to the date of an election. There well may be situations when such court-sanctioned modifications will be necessary. This case, however, does not present such a circumstance.

As the Court already stated, the Network, as the one seeking injunctive relief, must satisfy all four of the requirements. *See Real Truth About Obama, Inc.*, 575 F.3d at 346 ("[A]ll four requirements must be satisfied."). It then logically follows that, if the Network cannot meet the first requirement one must satisfy to obtain injunctive relief, there is no need for the Court to consider the remaining three. Accordingly, the Court declines to address the remaining arguments for or against the Court's granting of injunctive relief here. *See Schilling v. Schwitzer-Cummins Co.*, 142 F.2d 82, 84 (D.C. Cir. 1944) (The Court is "not require[d] or encourage[d] . . . to assert the negative of each rejected contention as well as the affirmative of those which [it] find[s] to be correct.").

### C.   *Whether the Network is seeking prohibitory or mandatory injunctive relief*

In Defendants' response, they summarily note the Network is requesting a mandatory injunction, the Network fails to mention it, and neither briefs the Court on it. Nevertheless, from the Court's review of the Network's filings, it appears it is requesting mandatory relief.

As it relates to this case, prohibitory injunctive relief would prohibit Defendants from changing the voter registration date. But, it would take mandatory relief to mandate Defendants to modify that deadline.

But, it does not matter. This is so because the Court has already concluded the Network is unable to show it should receive prohibitory injunctive relief. And, it is more difficult to demonstrate the need for mandatory injunctive relief than prohibitory relief. *See Pashby*, 709 F.3d at 319 (4th Cir. 2013) ("Furthermore, when the [injunctive relief] is mandatory rather than prohibitory in nature, [the Fourth Circuit's] application of this exacting standard of review is even more searching.") (citation omitted) (internal quotation marks omitted). Thus, because the Network is not due prohibitory relief, it follows it is also not due mandatory relief.

*****

The Network "is a non-partisan organization committed to expanding the franchise to as many South Carolinians as possible. For years, it has focused on registering voters in-person from historically underrepresented communities of color." The Network's Motions at 1. Its commitment and focus are highly commendable. No one can reasonably be pleased with less folks being registered to vote in the upcoming November 3, 2020, election.

But, this Court does not write on a blank slate. It must abide by the law laid down by the Supreme Court "that federal courts ordinarily should not alter state election rules in the period close

to an election." *Andino*, 2020 WL 5887393, at *1 (citing *Purcell*). That law, applied to the facts of this case, leads to just one legal conclusion: the Court must deny the Network's claims for relief.

The Network's goals are laudable. They are as laudable as the untimeliness of the filings of both their lawsuit and their motions are troubling.

If the timing was a strategy that backfired, it is disturbing. If, however, it was a deadline that was overlooked, or some other time-related factor the Network was unable to remedy, it is, in the present case, simply defeating.

### V.    CONCLUSION

In light of the foregoing discussion and analysis, the Network's motions for a temporary restraining order and a preliminary injunction are **DENIED**. Consequently, the pending motion to intervene is **RENDERED AS MOOT**.

**IT IS SO ORDERED**.

Signed this 9th day of October, 2020, in Columbia, South Carolina.

                                         /s/ Mary Geiger Lewis
                                         MARY GEIGER LEWIS
                                         UNITED STATES DISTRICT JUDGE